UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:21-CV-10547-RWZ (CONSOLIDATED / LEAD CASE)
CIVIL ACTION NO. 1:21-CV-10560-RWZ

In re Andrea A. Angera, Jr., Chapter 7 Bankruptcy Case No. 19-10764

DONALD R. LASSMAN, Chapter 7 Trustee, and SEA GREENS HOLDINGS, LLC,
Creditor—Appellants

v.

ANDREA A. ANGERA, JR., Debtor—Appellee

MEMORANDUM & ORDER

November 4, 2021

ZOBEL, S.D.J.

By an order entered on March 18, 2021, the United States Bankruptcy Court for the District of Massachusetts overruled objections of the Chapter 7 Trustee, Donald R. Lassman, and a creditor, Sea Greens Holdings, LLC ("SGH") (collectively, "Appellants"), to the Debtor Andrea A. Angera, Jr.'s ("Angera") claimed homestead exemption. The matter is now before me on appeal by the objectors to that order, together with Angera's motions to dismiss the appeal as frivolous (Docket #18) and for legal fees and costs incurred thereof (Docket #20). For the reasons explained below, the bankruptcy court's order is AFFIRMED; the motions to dismiss and for legal fees and costs are DENIED.

I.   **Procedural Background**

Angera filed for Chapter 7 bankruptcy on March 11, 2019. On his Schedule C, he claimed as exempt under Massachusetts law his real property located at 3

1

Muskoday Way in Edgartown, Massachusetts on the island of Martha's Vineyard (the "Property"). Angera's claimed exemption was based on a Declaration of Homestead of the Property recorded on November 4, 2014. Appellants timely objected to that claim of exemption.

In February 2021, the bankruptcy court held a three-day evidentiary hearing by videoconference on Appellants' consolidated objections. It issued its findings orally on March 16, 2021 and entered judgment overruling Appellants' objections on March 18, 2021.

Each Appellant timely appealed. On May 27, 2021, the appeals were consolidated and the parties' briefing schedule set. In addition to the appellate briefing, Angera filed two motions: (1) a motion to dismiss the appeal as frivolous (Docket #18), and (2) a motion for the award of damages in the form of legal fees and costs due to the purported frivolous appeal (Docket #20).

## II.   Standard of Review

In considering an appeal from an order of a bankruptcy court, a district court reviews the bankruptcy judge's conclusions of law *de novo* but the findings of fact for clear error. TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In re Hill, 387 B.R. 339, 345 (B.A.P. 1st Cir. 2008) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)). "If the trial court's account of the evidence is plausible, in light of the record in its entirety, a reviewing court may not reverse, even if convinced that if it had been sitting as a trier of fact, it would have

weighed the evidence differently." Id. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson, 470 U.S. at 574.

Whether a debtor is entitled to claim an exemption in a bankruptcy proceeding is a question of law and is reviewed *de novo*. See, e.g., In re Morad, 323 B.R. 818, 822 (B.A.P. 1st Cir. 2005). The question at the heart of this appeal, however, is whether Angera was domiciled in Massachusetts during the relevant statutory period thereby entitling him to claim the homestead exemption under Massachusetts law. That question, although a mixed question of law and fact, requires a fact-intensive determination for which the bankruptcy judge had to weigh the evidence and make credibility judgments and is therefore reviewed for clear error. Id. (citing Valentin v. Hosp. Bella Vista, 254 F.3d 358, 365 (1st Cir. 2001)); see also, e.g., In re Felix, 582 B.R. 915, 921 (6th Cir. 2018). Appellants, as the objecting parties, had the burden of proving that Angera is not entitled to his claimed exemption. In re Morad, 323 B.R. at 822.

## III.  The Bankruptcy Court's Findings

During the March 16, 2021 proceeding, the bankruptcy court orally provided the parties with its findings of fact and conclusions of law based on the record developed during the three-day evidentiary hearing. A summary of those findings and conclusions is as follows.

Angera has owned the Property since 1992. Docket #16-2 at 7.[1] Around 2005, he took up residence in the Property with his wife, Barbara Sabia, and their two young

---

[1] Docket #16-2 is the transcript of the bankruptcy judge's March 16, 2021 oral recitation of the findings of fact and conclusions of law.

3

children. Id. Angera is a licensed pilot and would commute by private plane for work outside the state. Id. Ultimately Ms. Sabia was not happy living year-round on Martha's Vineyard, so, in 2006, the family relocated to Richfield, Connecticut. Id. Angera moved his business to Connecticut around this time as well. Id.

In 2011, Angera's financial situation began to deteriorate as did his marriage. Id. at 7-8. At some point before 2016, he and Ms. Sabia began to consider themselves as maintaining separate households although they stayed married for the sake of their children. Id. at 8. In 2016, the family moved into a rental home in Middlebury, Connecticut after Ms. Sabia's free housing from her employer ended. Id. Angera signed the lease as did his wife at the landlord's insistence. Id. By this time, however, Angera regularly spent time at the Property on Martha's Vineyard. Id. He continued to work in Connecticut and regularly visited his children. Id. He no longer owned a plane and, because the commute between Connecticut and Martha's Vineyard could take three to four hours or longer depending on ferry service, he had to stay in Connecticut for extended periods to earn a living. Id.

Angera worked primarily in Connecticut during 2016 through the summer of 2017. Between February and August 2017, he provided consulting services to SGH. Id. He gave SGH the Middlebury, Connecticut address as his place of residence. Id. at 9.

Angera and SGH ended the consulting relationship after a falling out in the second half of 2017. Id. at 9. After that, Angera moved his primary work location from Connecticut to Maine, where he worked through the date he petitioned for bankruptcy. Id. In an amended complaint he filed *pro se* in a 2017 lawsuit against SGH in the

4

federal district court in Connecticut, Angera stated that since May 2017 he was a resident of Massachusetts and domiciled in Maine. Id. at 13. Angera retracted that statement in a subsequent filing in the same case, clarifying that he was actually a temporary resident of Maine and that since 1983 he has been a permanent resident, citizen, and domiciliary of Massachusetts. Id. at 16-17.

At the time he filed the bankruptcy petition, Angera had a Massachusetts driver's license, owned a motor vehicle that was registered and kept at the Property, and owned various watercraft that were titled in Massachusetts, registered with the Massachusetts Office of Environmental Affairs before and after the 24 months preceding his bankruptcy filing, and also kept at the Property. Id. at 11. Angera had been registered to vote in Edgartown, the town in which the Property is located, since 2008, his registration was active in 2018, and he voted in Edgartown in 2012, 2013, 2016, and 2020. Id. He was summoned for jury duty at the Edgartown Superior Court in 2016, 2018, and 2019. Id. at 12. During the relevant period, Angera maintained memberships in local organizations on Martha's Vineyard, including membership in the Island Club and Martha's Vineyard Rod and Gun Club. He had an active bank account at a local Martha's Vineyard bank, received year-round utility and internet service at the Property, and paid real estate taxes on the Property. Id. He filed Massachusetts resident tax returns in 2017 and 2018. Id. His credit card records showed that during 17 of the 24 months preceding the bankruptcy he spent time on Martha's Vineyard. Id. at 15.

Angera and his wife allowed several acquaintances to stay at the Property periodically during the 24-month pre-petition period when Angera was not present there and listed the Property as rental property on their 2015, 2016, and 2017 state and

federal tax returns. Id. at 13. However, they never reported any rental income from the property on those returns. Id. at 15. They also filed 2016, 2017, and 2018 Connecticut state tax returns, the first of which was a Connecticut resident return. Id. at 13. Their Connecticut accountant prepared their 2015, 2016, and 2017 tax returns. Id.

Based on the foregoing, the bankruptcy court concluded that although Angera worked primarily in Connecticut first and then in Maine during 2017 to 2019, and maintained residences in each state while he worked there, he was domiciled in Massachusetts throughout the relevant period. Id. at 9, 17. Accordingly, Massachusetts law governed his claimed exemption. Id. at 17.

On the other issues raised by SGH, the bankruptcy court concluded the following. First, Angera's November 4, 2014 Declaration of Homestead was valid because while his wife was named in the declaration she was not an owner of the Property and thus not obligated to sign the declaration. Id. at 18-19. Furthermore, the representation on the declaration that the Property was, or was intended to be, Ms. Sabia's primary residence, even if no such corroborating facts existed, did not invalidate the declaration because it was Angera, not his wife, who was claiming the exemption. Id. Second, although the evidentiary record established that Angera maintained a residence in Connecticut between 2014 and 2017, it did not show that Connecticut was his principal residence or that he had abandoned the Property on Martha's Vineyard. Id. at 20-21.

**IV. Discussion**

Appellants argue that the bankruptcy court erred in concluding that Angera was domiciled exclusively in Massachusetts for the relevant statutory period, that is the 730

6

days immediately preceding the filing of his bankruptcy petition. They assert that the evidentiary record demonstrates that Angera was domiciled first in Connecticut and then Maine during the 730-day period, and in Connecticut for the earlier 180-day period, therefore the bankruptcy court's conclusion that Angera was domiciled exclusively in Massachusetts was clearly erroneous and Connecticut law, not Massachusetts law, should govern Angera's claimed exception. E.g., Docket #14 at 8-9; Docket #15 at 5. SGH additionally argues that, even if Angera was entitled to claim the exemption under Massachusetts law, the bankruptcy court erred in finding that Angera's 2014 Declaration of Homestead was valid as of the bankruptcy petition filing date and that the Property was Angera's principal residence from 2014 through that time. Docket #14 at 2, 20-29.

### A.  Domicile

Section 522 of the Bankruptcy Code provides for a debtor to exempt certain property from the bankruptcy estate that would otherwise be available for distribution to creditors, and § 522(b) allows a debtor to choose between the federal bankruptcy exemptions listed in § 522(d) or the exemptions provided by their state of residence, unless the state has "opted out" of the federal exemption scheme. See 11 U.S.C. § 522. If a debtor chooses the option of claiming an exemption under state law, the applicable state exemption law is that of the state

> in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place.

Id. § 522(3)(A).

7

In determining Angera's domicile, the bankruptcy judge applied the correct legal standard. Specifically, the judge held that Angera's domicile is "the place where he has his true fixed home and principal establishment and to which whenever he is absent he has the intention of returning." Docket #16-2 at 6-7, 10 (citing Lundquist v. Precision Valley Aviation, 946 F.2d 8 (1st Cir. 1991)). The bankruptcy judge explained that "while a person may have more than one residence[,] he can have only one domicile and that while the location of his business or employment is certainly probative, courts tend to emphasize the location of a person's domestic and social life over business contacts when determining domicile." Id. at 10. The court further noted that because "a person's opinion of his domicile is an unreliable diagnostic, the First Circuit articulates a series of factors relevant to determining a person's true intent with respect to his domicile." Id. Those relevant factors include: "the places where[] (1) civil and political rights are exercised; (2) taxes are paid; (3) real and personal property are located; (4) driver's and other licenses have been obtained; (5) bank accounts are maintained; (6) memberships in clubs and churches are maintained; and (7) business or employment is located." Id. (citing Bank One, Texas v. Montle, 964 F.2d 48, 50 (1st Cir. 1992); Koppel v. Moses, No. 20-cv-11479-LTS, 2020 WL 6292871, at *4 (D. Mass. Oct. 27, 2020)). Where a person is registered to vote is considered a "weighty" factor in the analysis. Id. (citing Lundquist, 946 F.2d at 12). Additionally, at the outset of the oral recitation of the findings of fact, the bankruptcy judge observed that because Martha's Vineyard is an island not connected to mainland Massachusetts via a bridge, "[a] person who works off island cannot readily sustain a daily commute." Id. at 7. Finally, the judge correctly

8

noted that the Appellants have the burden to show that Angera is not entitled to the claimed exemption. Id. at 12.

Based on the record established, the bankruptcy judge's application of the legal standard and interpretation of the evidence was not clearly erroneous. As the judge found, Angera proffered evidence that each Bank One factor indicated Massachusetts as his domicile during the statutory period except for his place of business or employment, which the judge found to be first Connecticut and then Maine. Id. at 11. In light of the isolated and distant location of Martha's Vineyard, however, the judge concluded it was neither unusual nor surprising that a person living on Martha's Vineyard, like Angera, must seek employment off island. Id. at 11.

Appellants certainly put forth evidence contrary to the ultimate conclusion, including, as summarized above, evidence showing the many sustained contacts Angera had with Connecticut and Maine during the statutory period and Angera's own statement (although later retracted) that he was domiciled in Maine in 2017.[2] The bankruptcy judge, however, weighed that evidence in the context of the full record and his assessment of the witnesses' credibility. Although a factfinder could reach a different conclusion, the bankruptcy judge's conclusion is a "permissible view[] of the evidence," and nothing presented provides me "with the definite and firm conviction that a mistake has been committed." In re Hill, 387 B.R. at 345; Anderson, 470 U.S. at 574.

---

[2] Appellants argue that the bankruptcy judge "side-stepped" Angera's statement about being domiciled in Maine made in his 2017 *pro se* court filing, which Appellants argue was a judicial admission that should have cut against finding a Massachusetts domicile. See Docket #14 at 10-19; Docket #15 at 21; Docket #24 at 4-12. The judge, however, credited Angera's testimony given at the evidentiary hearing and, based on that, concluded that his "prompt and detailed correction of the record" in the lawsuit essentially neutralized the impact of the initial statement in the matter before it. Docket #16-2 at 17. Accordingly, I find that the bankruptcy court sufficiently addressed the issue and therefore give due deference to the court's determination, a conclusion I draw regardless of whether Angera's 2017 statement is considered a judicial admission, a question on which I do not weigh in.

Accordingly, the bankruptcy judge's conclusion that Angera was domiciled exclusively in Massachusetts for the 730 days preceding his bankruptcy filing is affirmed.

### B.     Declaration of Homestead and Principal Residence

Appellant SGH also appeals the bankruptcy judge's conclusions that Angera's 2014 Declaration of Homestead was valid and that his principal residence from 2014 through 2019 was Massachusetts. It argues that the court "failed to shift the burden to [Angera] to prove the location of his principal residence" and "took a myopic view" of the position that the declaration was invalid by "ignoring the majority of the argument and the evidence based on [Angera's] own conduct and statements." Docket #14 at 20-21. SGH's argument, however, essentially relies on its overarching argument that the evidence, including that from 2014 through 2019, demonstrates that Angera was domiciled—and thus his principal residence was located—in Connecticut and Maine, not Massachusetts. See Docket #14 at 20-29. The bankruptcy judge, however, weighed the totality of the evidence presented and made credibility determinations before concluding that although Angera "maintained a residence in Connecticut between 2014 and 2017," the Appellants had not carried their burden to prove that Connecticut was Angera's principal residence or that he had abandoned Martha's Vineyard after 2014, as was their burden to do. Docket #16-2 at 20-21. As explained above, the bankruptcy court applied the correct legal standard and made permissible findings of fact based on the full record. I therefore give due deference to its conclusion.

The bankruptcy judge also found that even if Ms. Sabia's principal residence was Connecticut for the entire period of 2014 through 2019, that fact did not invalidate the

10

declaration, when construed liberally in favor of Angera under Massachusetts law, because the question is whether Angera, not Ms. Sabia, can benefit from the declaration. Id. at 19-20. SGH does not present any persuasive reason to disturb that conclusion.

Accordingly, the bankruptcy judge's conclusion that the declaration is valid and that Angera's principal residence was Massachusetts during 2014 through 2019 is supported by the record.

**V.   Angera's Motions**

As the preceding analysis suggests, this appeal presented issues that were not frivolous or deserving of sanctions. Accordingly, Angera's motions to dismiss the appeal and for the awarding of damages and costs are denied.

**VI.   Conclusion**

For the foregoing reasons, the Bankruptcy Court's March 18, 2021 order is AFFIRMED, but Angera's Motion to Dismiss Appeals of Chapter 7 Trustee and Creditor Sea Green Holdings, LLC (Docket #18) and his Motion for Damages and Costs for the Submission of Frivolous Appeals by the Appellants Pursuant to Fed. R. Bankr. Pro. 8020 (Docket #20) are DENIED.

November 4, 2021
DATE

/s/ Rya W. Zobel
RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE